UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NUMBER 1:24-cv-135-LLK

BRANDY C.[1]                                                                                    PLAINTIFF

v.

FRANK BISIGNANO,
Commissioner of Social Security                                                       DEFENDANT

MEMORANDUM OPINION AND ORDER

Plaintiff filed a Complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Final Decision of the Commissioner denying her claims for Disability Income (DIB) and Supplemental Security Income (SSI) Benefits under Titles II and XVI of the Social Security Act. [DN 1].[2] Plaintiff's Fact and Law Summary is at DN 10 and the Commissioner's responsive Fact and Law Summary is at DN 12. No Reply was filed. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge to determine this case, with any subsequent appeal to be filed directly to the United States Court of Appeals for the Sixth Circuit. [DN 8.] The matter is now ripe for determination.

After examining the administrative record, the arguments of the parties, and the applicable authorities, the Court is of the opinion that the matter should be remanded to the Commissioner for further consideration. Specifically, the case is remanded to the Commissioner pursuant to Sentence Four of 42 U.S.C. § 405(g) for a new decision which considers fully Plaintiff's urinary urgency/frequency and incontinence in light of her other severe impairments.

---

[1] Pursuant to General Order 22-05, Plaintiff's name in this matter is shortened to first name and last initial.
[2] References to specific pages in the Court's Docket in this Memorandum Opinion will include the Docket Number and page number found in the red inked header at the top of the document.

## I. PROCEDURAL HISTORY

**Administrative History**. Plaintiff filed applications for DIB and SSI on February 13, 2023, alleging disability from April 1, 2022, at age 46 from DDD, back issues, depression, bipolar disorder, diabetes, osteoarthritis, panic attacks, migraines, hypothyroidism, high blood pressure, and high cholesterol. [DN 7] at 103, 292. Her claims were denied initially and upon reconsideration. Plaintiff requested a hearing before an ALJ which was granted. The hearing was conducted on May 8, 2024, via telephone, with attorney Charles Richard Burchett attending on Plaintiff's behalf. Hearing Transcript, [DN 7] at 52. The hearing was conducted by ALJ Eric Anschuetz. Also attending and testifying during the hearing was impartial vocational expert Stephanie Barnes. On June 18, 2024, the ALJ issued an unfavorable Decision finding that Plaintiff was not disabled. ALJ Decision, [DN 7] at 22-38.

Plaintiff requested review of the ALJ's Decision by the Appeals Council. On September 11, 2024, the Appeals Council denied Plaintiff's request for review of the ALJ's Decision. [DN 7] at 7-10. At that point, the ALJ's Decision became the final decision of the Commissioner. 42 U.S.C. § 405(g); 20 C.F.R. § 422.210(a). Thus, this Court will be reviewing the ALJ's Decision and the evidence that was contained within the administrative record at the time the ALJ rendered the decision. 42 U.S.C. § 405(g).

**The ALJ's Decision**. The ALJ's Decision denying Plaintiff's claims for DIB and SSI benefits was based upon the five-step sequential evaluation process which applies in all Social Security disability cases. First, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2022, and that she has not engaged in substantial gainful activity since April 1, 2022, the alleged onset date (20 CFR 404.1571 *et. seq.*, and 416.971 *et seq.*).

At Step Two, the ALJ found that Plaintiff has the following severe impairments: diabetes mellitus, migraine headaches, depressive disorder, anxiety disorder, degenerative disc disease, and obesity (20 CFR 404.1520(c) and 416.920(c)).

At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1526, 416.920(d), 416.925 and 416.926).

As in any case that proceeds beyond Step 3, the ALJ must determine a claimant's residual functional capacity (RFC), which is defined as "the most you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a), 404.1546(c), 416.945(a), 416.946(c). In making an RFC determination, the ALJ considers the record in its entirety including medical source statements, prior administrative medical findings, and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c), 416.929, 416.945(a)(3), 416.946(c). The ALJ found that, notwithstanding her impairments, Plaintiff retains the RFC to perform a range of light work:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 1567(b) and 416.967(b) except she can occasionally climb ramps and stairs but should never climb ladders or scaffolds. The claimant can frequently stoop, occasionally kneel, and crouch, but never crawl. Her ability to balance is unlimited. She must not work in hazardous work environments. The claimant is limited to tasks that require only simple decision making. She must be permitted to alternate sitting and standing at a maximum of 30-minute intervals while remaining at her workstation but can continue to use her hands for work as necessary. There should be no more than occasional exposure to rapidly moving parts. She cannot work at unprotected heights.

Decision, [DN 7] at 29.

At Step Four, the ALJ found that Plaintiff has no past relevant work (20 CFR 404.1565 and 416.965). The ALJ made additional findings including that the claimant was born on August 7,

3

1975, and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963). In addition, the ALJ found that claimant has at least a high school education (20 CFR 404.1564 and 416.964), and that transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

At Step Five, the ALJ found that considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a). Accordingly, the ALJ found that the claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2022, through the date of his June 18, 2024, Decision (20 CFR 404.1520(g) and 416.920(g)).

## II. STANDARD OF REVIEW

The Court's task in reviewing the ALJ's findings is limited to determining whether they are supported by substantial evidence and made pursuant to proper legal standards. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *McGlothin v. Comm'r of Soc. Sec.*, 299 F.App'x 516, 522 (6th Cir. 2008). The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). In reviewing the record as a whole, the Court may not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 296 (6th Cir. 1994).

The substantial evidence standard presupposes that there is a "zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). A reviewing court decides only whether substantial evidence supports the decision. *Id*. If it does, the court affirms the decision even in the face of substantial evidence supporting the opposite conclusion. *Id*. The Court may look to any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir 2001).

## III.  DISCUSSION

**Plaintiff's Arguments**. In her Fact and Law Summary, Plaintiff makes three arguments: 1) the ALJ's Decision does not correctly evaluate the Plaintiff's urinary incontinence post-surgery in the severe impairment analysis at Step 2, nor is it properly considered in the RFC found by the ALJ; 2) The ALJ failed to perform a full evaluation of the Plaintiff's symptoms and objective medical findings related to her back and neck pain as required by regulation in assessing the RFC; 3) The job identified as "Office Helper" by the vocational expert at the Administrative Hearing was not supported by substantial evidence as the VE failed to identify any numbers of jobs for this title.

**Relevant Hearing Testimony**. At Plaintiff's May 8, 2024, telephonic Hearing, she offered testimony indicating that she was 48 years old, a high school graduate, and filing for disability for the third time as of April 1, 2022, due to increasing problems with her neck and low back. She had been working approximately 32 hours per week for Aramark as a cashier in Western Kentucky University's cafeteria since August of 2023, driving approximately 40 minutes to and from work.

Plaintiff testified to her ability to drive, help her mother with some household chores, run errands, watch television, draw and color with stencils, listen to audiobooks, play games on her phone, and make jewelry. She discussed her work duties, taking her lunch breaks in her car to lay the seat back and rest her back, and the fact that the dorsal column stimulator helps with about 25% of her back pain. The testimony during the hearing focused almost exclusively upon Plaintiff's pain symptoms resulting from degenerative disc disease in her back and neck[3] for which she has received extensive pain management treatment and briefly touched on treatment for her migraine headaches and mental health issues. Hearing Transcript, [DN 7] at 61-64.

### A.  Plaintiff's first argument is persuasive.

Plaintiff alleges the ALJ erred in not identifying urinary incontinence as a severe impairment at Step Two of the sequential evaluation process. At Step Two, Plaintiff bears the burden of proving the existence of a severe, medically determinable impairment that meets the twelve-month durational requirement. See *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Harley v. Comm'r of Soc. Sec.*, 485 F.App'x 802, 803 (6th Cir. 2012). The Sixth Circuit has found it "legally irrelevant" that some of a claimant's impairments are found to be non-severe when other impairments have been found severe in order to clear the "threshold inquiry" of Step Two. *Anthony v. Comm'r of Soc. Sec.*, 266 F. App'x 451, 457 (6th Cir. 2008*); Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 658 (6th Cir. 2009). That is, the claimant's burden at Step Two is "a *de minimis* hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).

---

[3]      ALJ:     What is your worst impairment?
      Clmt:    My lower back, right now.
Hearing Transcript, [DN 7] at 61.

6

Where the ALJ determines that a claimant has at least one severe impairment at Step Two, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003). Instead, the pertinent inquiry is whether the ALJ considered the "limiting effects of all [claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity." 20 C.F.R. §§ 404.1545(e), 416.945(e)[4]; *Pompa*, 73 F. App'x at 803 (rejecting the claimant's argument that the ALJ erred by finding that a number of her impairments were not severe where the ALJ determined that claimant had at least one severe impairment and considered all of the claimant's impairments in the RFC assessment); *Maziarz v. Sec'y of HHS*, 837 F.2d 240, 244 (6th Cir. 1987).

Here, Plaintiff argues that the ALJ erroneously failed to find that her urinary incontinence was a severe impairment, noting that it is unclear whether the condition was even considered in the ALJ's analysis at all. [DN 10] at 2. The Step Two treatment of medical impairments not found to be severe was addressed in the ALJ's Decision by this boilerplate:

> Any other impairments existing in the medical records but not specifically addressed herein, I find to be either non-severe, as they do not meet the durational requirements of 12 months or do not have more than a minimal effect on the claimant's physical or mental capacity to engage in basic work activity, or not medically determinable due to the lack of objective signs and/or findings. Nonetheless, I have considered all of the claimant's impairments, including non-severe impairments in evaluating the claimant's residual functional capacity as required by 20 CFR 404.1545(a)(2) and 416.945(a)(2).

Decision, [DN 7] at 25.

---

[4] (e) *Total limiting effects.* When you have a severe impairment(s), but your symptoms, signs, and laboratory findings do not meet or equal those of a listed impairment . . . we will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity. Pain or other symptoms may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone; e.g., someone with a low back disorder may be fully capable of the physical demands consistent with those of sustained medium work activity, but another person with the same disorder, because of pain, may not be capable of more than the physical demands consistent with those of light work activity on a sustained basis. In assessing the total limiting effects of your impairment(s) and any related symptoms, we will consider all of the medical and nonmedical evidence.

Plaintiff points out that the ALJ's Decision "makes no review of either the objective medical findings or the symptoms which are established regarding incontinence." [DN 10] at 3. She argues that the medical evidence contained within the administrative record illustrates that she "has significant limitations in ability to maintain a work schedule consistent with the adjudged residual functional capacity due to the additional alleged severe impairment" of urinary incontinence. She cites to the record showing diagnosis of "mixed urinary incontinence and overactive bladder, accompanied by a strong urge to void," treatment with multiple providers for incontinence, and an unsuccessful trial of Ditropan (bladder relaxant). *Id*. Urodynamic testing with a urology specialist (following a March 9, 2020, suburethral sling/bladder mesh surgery[5]) revealed incomplete bladder emptying, urge incontinence twice weekly, and diagnoses with post-bladder mesh sling, urgency and urge incontinence. *Id*.

Citing 42 U.S.C. § 423(d)(5)(A), the Commissioner counters Plaintiff's arguments noting that it is the Plaintiff who ultimately bears the burden of proving disability and is responsible for furnishing medical and other evidence regarding her impairments. [DN 12] at 4. The Commissioner contends that substantial evidence supports the ALJ's Step Two findings excluding urinary incontinence as an impairment because "Plaintiff failed to demonstrate that her alleged urinary incontinence was a 'severe' impairment that caused more than minimal functional limitations impacting her ability to work." *Id*. The Commissioner further argues that Plaintiff failed to show "that the evidence demanded additional limitations in the RFC to accommodate her alleged

---

[5] <u>March 9, 2020</u>: Ob/Gyn Dr. Trevor: Surgical intervention for uterine prolapse/urinary incontinence/labial lesion; total vaginal hysterectomy, tension free vaginal taping procedure (suburethral sling with mesh), and left labioplasty. Pelvic organ prolapse symptoms have been present for several years and have worsened over the past 4 months. She states that symptoms have worsened when prolapse is at its worse [sic], it is uncomfortable to sit down. Patient admits to bulging sensation. She was recently seen at ER for symptoms where pelvic organ prolapse was observed and cervix was visualized at introitus. Patient also notes urinary incontinence. [DN 7] at 584-600.

urinary incontinence." [DN 12] at 5. The Commissioner points out various places in the record where Plaintiff could have included complaints of urinary incontinence but failed to do so. [DN 12] at 7.

### B.  Review of the Administrative Record

The Court has undertaken review the ALJ's Decision in light of the extensive medical evidence contained in the administrative record. The only reference to *urinary symptoms* contained within the ALJ's Decision is from a January 3, 2020, Endocrinology new patient visit "Review of Systems" list; the ALJ discounted any symptoms attributable to Plaintiff's *diabetes mellitus* with, "The claimant had no polyuria or frequency (Exhibit 26F at 2)."[6] ALJ Decision, DN 7 at 30.

Plaintiff did list overactive bladder as a medical condition in both the August 19, 2023, Disability Report Appeal [DN 7] at 326, 328, 330, and the November 15, 2023, Disability Report Appeal. [DN 7] at 348, 352. Additionally, the voluminous medical record establishes years of recurrent urinary tract problems. Plaintiff has been treated for urinary incontinence and overactive bladder by numerous providers.[7] The records reflect that she has undergone unsuccessful bladder

---

[6] The Review of Systems "Denies __ symptom" portion of click-the-box, electronic medical records keeping is routinely inaccurately completed by the record-keeper and often directly contradicts the physician's narrative portion of the record. See for example Ob/Gyn Dr. Trevor's March 9, 2020, medical record entry for Plaintiff's total vaginal hysterectomy with tension free vaginal taping procedure and left labioplasty. "Patient notes complaints of pelvic organ prolapse and vaginal discomfort. She states that symptoms have been present for several years and have worsened over the past 4 months. She states that symptoms have worsened and when prolapse is at its worse [sic], it is uncomfortable to sit down. Patient admits to bulging sensation. She was recently seen at ER for symptoms where pelvic organ prolapse was observed and cervix was visualized at introitus. Patient also notes *urinary incontinence*. She states that she has *frequent leaking* and that it occurs primarily with stressors such as coughing, laughing, and lifting. She admits to wearing pads daily." Despite Plaintiff's presentation for major genitourinary surgery to address organ prolapse and urinary incontinence, Review of Systems Genitourinary is marked "Denies dysuria and incontinence." [DN 7] at 579. (Emphasis added.)

[7] February 24, 2021: Ob/Gyn Trevor: 45-year-old with mixed urinary incontinence, however the main component is urge incontinence. Patient has a strong urge to void many times cannot make it to the restroom. She started on Ditropan 10 mg daily at her last visit. She reports this helps somewhat but is still a major problem with urge incontinence. She also reports pelvic organ prolapse however I did not not see any apical organ prolapse on her last exam 2 weeks ago. [DN 7] at 1321.
November 4, 2021: Fairview Clinic: Review of Systems: Genitourinary OAB and stress incontinence. [DN 7] at 1037.
March 29, 2022: Fairview Clinic: Review of Systems: Genitourinary OAB and stress incontinence. [DN 7] at 1034.
May 2, 2022: ER Visit: Genitourinary: reports urgency and frequency. [DN 7] at 806.
February 6, 2023: Fairview Clinic: Review of Systems: Genitourinary OAB and stress incontinence. [DN 7] at 1030.

sling surgery, taken prescribed medications of Ditropan, Vesicare, and Myrbetriq for overactive bladder, followed regularly with a urology specialist,[8] urodynamics testing showed incomplete bladder emptying,[9] and that she wears adult diapers daily.[10] The records additionally reflect placement of a ureteral stent in 1995, a history of kidney stones, a right renal cyst and stone, and urinary bladder wall thickening.[11]

The medical record overwhelmingly supports Plaintiff's claim of urinary incontinence over a period of years. This Court would conservatively estimate at least one hundred pages of the medical records in this case point directly to Plaintiff's urinary incontinence and related problems. There is no indication that this condition was even considered by the ALJ at Step Two or later, particularly in formulating the RFC. Notably absent from the ALJ's Decision is any mention of Plaintiff's urinary incontinence, overactive bladder, pelvic organ prolapse,[12] resulting March 9, 2020, surgery with urethral mesh taping, and/or the months of related genitourinary complications

---

May 3, 2023: Fairview Clinic: dysuria and frequency for several days. Urinary tract infection. She is having bladder spasms. [DN 7] at 1025.

June 5, 2023: Fairview Clinic: Here for f/u of … OAB. [DN 7] at 1055.

November 3, 2023: Fairview Clinic: Review of Systems: Genitourinary OAB and stress incontinence. [DN 7] at 1236.

[8] March 25, 2021: Urologist Kalakish at Gilbert-Graves Clinic; referred to urology by Dr. Trevor for continued urge incontinence issues. [DN 7] at 1467.

[9] June 23, 2021: Urologist Kalakish: Urodynamics testing, [DN 7] at 1455-1460.

[10] March 5, 2020: Ob/Gyn Trevor: Since the birth of her second child she has had … stress urinary incontinence. She leaks a significant amount of urine with coughing sneezing laughing or bending over she often wears a pad to absorb urine when going out of the house. [DN 7] at 584.

September 7, 2021: Urologist Kalakish. She has urge incontinence a couple times per week. She has been wearing adult briefs daily. These are damp. [DN 7] at 1444.

[11] May 3, 2022: CT Scan of abdomen: Urinary bladder wall thickening that could represent a cystitis or related to underdistention. Correlation with urinalysis is recommended. [DN 7] at 787; March 25, 2021: Urologist Kalakish: New Patient Evaluation/Assessment: bothersome urinary symptoms s/p bladder mesh sling; s/p hysterectomy with bladder mesh sling; urgency; urge incontinence; nocturia; recurrent UTI concerns; blood on toilet tissue with wiping; hx of stones; hx of ureteral stent with pregnancy. [DN 7] at 1470.

[12] October 15, 2019: ER Visit: On antibiotics for UTI; felt protrusion from vagina a few days ago. [DN 7] at 569; Patient presents with pelvic organ prolapse, Stage 2 with rest, Stage 3 when bearing down. Currently being treated for UTI following culture from zip clinic. [DN 7] at 572.

that followed (including a large post-surgical abscess[13]; migrated, exposed bladder mesh requiring excision from inside her vagina[14]; and recurrent pelvic organ prolapse[15]).

Certainly, Plaintiff ultimately bears the burden of proving a more restrictive RFC than that found by the ALJ. *Dyson v. Comm'r of Soc. Sec.*, 786 F.App'x, 586, 589 (6th Cir. 2019). Typically, a claimant may satisfy this burden by showing that either 1) a treating or other medical source opined limitations not contemplated by the ALJ's RFC and the ALJ erred in discounting the opinion; or 2) the ALJ improperly evaluated the limiting effects of other subjective symptoms.

---

[13]April 4, 2020, ER CT Scan of Abdomen: Impression: Nonspecific loculated thick walled fluid collection located posterior/involving the right paramedian rectus abdominal musculature measuring approximately 4.6 x 4.0 x 10 cm in transverse, AP and CC dimensions respectively. Finding may represent postoperative seroma versus hematoma or abscess. [DN 7] at 636.

April 21, 2020, ER Ultrasound of Abdomen: There is irregular complex collection within the anterior soft tissue right lower quadrant. This now measures approximately 10.8 x 7.7 x 4.3 cm and did measure 7.6 x 3.5 x 3 cm. Impression: Enlarging and more regular complex collection right lower quadrant anterior abdominal wall (measurements as above). This is suspicious for abscess although no increased vascularity present and hematoma also a consideration. Correlate Clinically. [DN 7] at 663.

April 28, 2020, ER visit for pelvic pain and drainage: Patient is a 44-year-old female presents with chief complaint pelvic pain pelvic drainage. Past medical history significant for hysterectomy roughly 2 months ago by Dr. Trevor OB/GYN. Patient developed a large postoperative pelvic collection . . . Patient reports she awoke to significant amounts of drainage this morning which is new. [DN 7] at 686; Roughly 5 to 10 mm opening with drainage right suprapubic region, no surrounding cellulitic changes, tenderness to palpation at the site. [DN 7] at 688.

May 5, 2020: Ob/Gyn Dr. Trevor: follow up visit for an abscess after a tension-free tape. I believe the hematoma is draining through the right exit incision from the tvt. Continue on prophylactic antibiotics. [DN 7] at 1311, 1314.

May 26, 2020: ER transfer from Greenview: CT scan of the abdomen pelvis performed at Greenview with concern for postoperative intra-abdominal collection/abscess. [DN 7] at 696. CT scan report reviewed. Previous CT report reviewed. Incision and drainage performed. Copious purulent drainage from superficial abscess. [DN 7] at 699.

May 28, 2020: Ob/Gyn Dr. DeAngelis: Follow up after incision and drainage of abdominal abscess . . . . The patient had a hematoma following her surgery at the site of the sling which has been improving. [DN 7] at 1351.

[14] June 11, 2020, OB/GYN Visit: Patient reports her partner can feel the mesh during intercourse. Dr. Trevor notes: 2 x 3 mm area of exposed mesh excised with scissors from vagina. [DN 7] at 1361, 1364.

June 23, 2020: Ob/Gyn Dr. Trevor: Vaginal Mesh: 44-year-old in for postoperative exam examination. [sic]. Patient is postop course has been complicated by an abdominal wall hematoma and exposure of polypropylene mesh after TVT. Patient reports no further problems with the TVT partner cannot feel the mesh anymore. She is now leaking urine. No vaginal bleeding. [DN 7] at 1315.

[15] January 31, 2021, ER Department Note: Patient is a 45-year-old female status post hysterectomy and cystocele repair presents to the ED with complaints of a prolapsed bladder. Patient states that for the past week she has felt an increased urgency that has been worsening ever since then. Reports that she is also had some mild low back pain. States that she got a "prolapse sensation" yesterday that is now worsening. Also complains of increased urinary frequency, along with some dysuria for the past 3 days. Reports she had one episode of urinary incontinence yesterday when she could not make it to the bathroom in time. Denies any fevers or vomiting. [DN 7] at 1432. GU External exam: other (Grade 2 pelvic organ prolapse). [DN 7] at 1436. Patient presents with new pelvic organ prolapse in the setting of previous hysterectomy and a cystocele repair last year. No sign of UTI in her urine. Discussed with patient need for follow-up with gynecology for further evaluation. *Id*. Disposition: Clinical Impression: Prolapse of female pelvic organs. [DN 7] at 1432-1437.

An ALJ's evaluation of a claimant's symptoms is governed by Social Security Ruling 16-3p and 20 C.F.R. §§ 404.1529, 416.929, which mandate a two-step process for evaluating an individual's symptoms. At the first step, the ALJ must "determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms." SSR 16-3p at *3. The ALJ must base this determination upon objective medical evidence. *Id*. At the second step, the ALJ must "evaluate the intensity and persistence of an individual's symptoms … and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." SSR 16-3p at *9. As part of this analysis, the ALJ must decide whether an individual's symptoms and accompanying limitations are consistent with the evidence of record. *Id*. at *8. The Social Security Administration recognizes that individuals experience symptoms differently, and that the ALJ must therefore examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." In making findings regarding symptoms, the ALJ will consider whether an individual's statements are consistent with his symptoms, keeping in mind that these statements may themselves be inconsistent because "[s]ymptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time." *Id*. at *8-9.

This Court cannot conclude that the ALJ's evaluation of Plaintiff's symptoms or the functional limitations related thereto are supported by substantial evidence given the Decision's silence on her urinary incontinence. The medical record indicates two separate episodes of pelvic organ prolapse accompanied by urinary incontinence symptoms; the bladder mesh that was surgically placed to improve her bladder problems instead migrated to the inside of her vagina and

possibly cause a post-surgical abdominal wall abscess. While the ALJ's Decision states that he considered "all symptoms", the Decision does not flesh this out. "Only by showing its work can the courts and claimants alike evaluate whether the ALJ applied standards appropriately and evaluated evidence adequately." *Emily M. v. Comm'r of Soc. Sec.*, No. 5:21-CV-114-BJB-LLK, 2022 WL 4595065, at *3 (W.D. Ky. Sept. 30, 2022).

This Court is mindful that an RFC describes the residual abilities of what a claimant can still do, not the diagnosis of their conditions (as the mere diagnosis of a condition says nothing about its severity. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)). But the urinary incontinence condition described in Plaintiff's medical records in this case should inform the ALJ's conclusions about Plaintiff's residual work abilities. Where relevant evidence is not even mentioned – her need for additional bathroom breaks and any other work-related limitations – this Court has no way of knowing whether the evidence was discounted or overlooked. While the threshold for evidentiary sufficiency is "not high," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), the ALJ must have some reasonable basis for his findings. The Court is particularly troubled given the medical record which contains numerous examples of Plaintiff seeking treatment, undergoing tests and surgery, and taking medications for her incontinence issues. The ALJ's failure to consider her urinary issues was not harmless.

Here, the ALJ failed to properly consider Plaintiff's urinary issues. The Court cannot conclude that the ALJ's Decision is supported by substantial evidence. As such, the case will be reversed and remanded for a new decision full consideration of Plaintiff's urinary incontinence along with the entirety of her medical record.

Because Plaintiff's first argument is persuasive and the ALJ's Decision does not comport with applicable legal standards, the case is remanded to the Commissioner for a new decision and

further proceedings. On remand, the Commissioner should reassess the entire record, providing

sufficient reasons and readily identifiable evidentiary support for the decision under applicable

law.

## IV.  CONCLUSION

For the reasons stated, the Court finds that the Decision of the Commissioner is not

supported by substantial evidence and fails to comport with applicable law. Therefore,

IT IS ORDERED that the Decision of the Commissioner is REVERSED, and this matter

is REMANDED for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

## NOTICE

Under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b), the

Magistrate Judge files these findings and recommendations with the Court and a copy shall

forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after

being served with a copy, any party may serve and file written objections to such findings and

recommendations as provided by the Court. If a party has objections, such objections must be

timely filed or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474

U.S. 140 (1985).

March 23, 2026

Copies to:    Counsel of Record

**Lanny King, Magistrate Judge**
**United States District Court**

14